**Richmond.**

REESE & Co. *v.* BATES.

February 18, 1897.

1. PLEADING—*Duplicity—Several facts constituting one warranty.*—An entire and indivisible contract of warranty or guaranty may warrant or guarantee the existence of several facts, and if a breach of the contract be relied on by way of set-off to an action to recover the purchase price of the article warranted, the several facts which constitute the breach should be pleaded in a single plea.

2. CUSTOM—*Usage of trade.*—A usage in opposition to the common law, however general it may be, has no force in this State on the ground of custom, and there is no customary law in Virginia, which, *per se*, can vest a right in a party claiming under it; but a usage or custom of trade may be shown.

3. PRINCIPAL AND AGENT—*General agents to sell—Powers to warrant—Usage of trade—Restrictions by principal.*—A general agent to sell personal property is presumed to have power to make such warranties with reference to the property as are usual and customary in like sales in that locality. It is competent for the party relying upon such warranty to prove as a usage of trade, what warranties are usually demanded by the buyer and given by the agents of the seller in effecting sales of similar articles in that locality. A restriction upon the power of the agent to make the usual warranties in effecting like sales, of which the buyer has no notice or knowledge, is not binding on him. If there be evidence tending to prove what warranties are usually given by agents in effecting like sales, it is for the jury to determine whether, in the particular case, the agent was clothed with the requisite authority.

4. WARRANTY—*What constitutes.*—An affirmation of quality by the seller of goods at the time of sale, intended as an assurance of fact and relied on by the buyer, constitutes a warranty. No particular form of words is necessary to constitute a warranty. If the seller assumes to assert a fact, of which the buyer is ignorant, or makes a representation of quality which the buyer relies upon as a warranty and is thereby induced to make the purchase, the seller is bound by it as a warranty, whether he so intended it or not.

VOL. XCIV—41

5. WARRANTY OF QUALITY—*Measure of damages for breach.*—In an action to recover the price of fertilizers sold, where the defence is a breach of warranty of the quality of the fertilizer, it is not error to instruct the jury that they are to look to the evidence for proof of the warranty and its breach, and, if established, they must find for the defendant "such damages as have resulted naturally from the breach of the said warranty." "Naturally" here means legitimately, and the instruction leaves it to the jury to determine from the evidence the amount of such damages.

6. PRINCIPAL AND AGENT—*General agent to sell—Powers of—Warranties.*—A general agent to sell is authorized to do whatever is usual in the market to carry out the object of his agency. But it is for the jury to determine upon the evidence what is usual. It is not necessary for the principal to have notice of the course of business. If such agent, in accordance with the usage of trade of the place of sale, gives a warranty of the quality of the goods sold, which is not in itself unjust to his principal, the latter will be bound by it, although ignorant of such usage.

7. WARRANTY OF QUALITY OF FERTILIZER—*How breach proved.*—Upon proof of a warranty that a fertilizer is as good as any other article of a like character and price offered upon the same market, a breach of the warranty may be established by proof that when applied in like quantities to the same crop, during the same season, upon the same land, receiving the same cultivation, results were obtained from the warranted fertilizer inferior to those obtained from other fertilizers offered upon the same market at the same price.

Error to a judgment of the Circuit Court of Norfolk county, rendered December 22, 1894, in an action of *Debt*, wherein the plaintiffs in error were the plaintiffs, and the defendant in error was the defendant.

                                                      *Reversed.*

The opinion states the case.

*Walke & Old,* for the plaintiffs in error.

*J. F. Crocker, John W. Happer* and *G. Hatton,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Reese & Co. instituted an action of debt in the Circuit Court of Norfolk county against Bates, claiming the sum of $1,918.17 as due them upon certain notes amounting to $1,739.20, and

a balance by open account of $179.50. To this action the
defendant pleaded *nil debet* and tendered two special pleas in
the nature of set-off, to which the plaintiffs objected, but the
court permitted the pleas to be filed, and its action in this
respect constitutes the plaintiffs' first assignment of error.

. During the progress of the trial exceptions were taken by the
plaintiffs to the rulings of the court admitting testimony over
their objections, and to certain instructions granted by the
court to the defendant, and to the rejection of certain instruc-
tions offered by plaintiffs. When the case was submitted to
the jury they found a verdict in favor of the defendant upon
his special pleas for $500. There was a motion to set the
verdict aside, as being contrary to the law and the evidence,
and the action of the court in overruling this motion consti-
tutes the last assignment of error.

Special plea No. 1 states that the defendant, who was en-
gaged in truck farming, purchased of the plaintiffs, who were
dealers in fertilizers, certain guano, "represented, guaranteed,
and warranted to be as good a potato special as any other in
the market; and the defendant, relying on and trusting to
said representation, guarantee, and warranty, was induced
thereby to buy of the plaintiffs the said guano, and at the price
mentioned in said declaration, and to use the same in the cul-
tivation of his crops of potatoes, beans, cabbage and other vege-
tables. And the defendant says he used and applied the
guano to his crops, and cultivated them in a husband-like
manner, and that his crops were almost entire failures, and
that they showed and derived no advantage whatever from
the use and application of said guano." He avers that the
guarantee and warranty were false; that they have been
broken, and that the guano was not as good a fertilizer as
any other guano in the market of like price, and that it was
not as good a potato special as any other in the market, and
was proved, in its application to the defendant's crops, to be
wholly worthless and ineffective. The defendant then states

that he sustained damage by reason of the breach of this warranty to the extent of $4,340, which he is ready and willing, in pursuance of the statute in such cases provided, to setoff against the sum claimed to be due and payable by the defendant to the plaintiffs.

Special plea No. 2 is to the same effect, except that the representations which are relied upon and pleaded in plea No. 1 as a guarantee or warranty are set out in plea No. 2 as having been made falsely and fraudulently with intent to deceive the defendant.

The contention of the plaintiffs is that, in stating in one and the same plea that the plaintiffs warranted the article sold to be "as good a fertilizer and as well adapted to the raising of potatoes, &c., as any other in the market at like price, and that the said guano was as good a potato special as any other in the market," the defendant is guilty of duplicity in pleading, and, for that cause, the plea is bad, and the motion to reject it should have been sustained by the Circuit Court. In this view we cannot concur. If the statement of the plea be true, there was but one contract of warranty in which the plaintiffs guaranteed and warranted the existence of two facts. It is an entire and indivisible contract, and, so far from being obnoxious to the charge of duplicity, it would have been bad pleading under the statute had the defendant undertaken to split up the right of action arising upon his contract, and to present it in separate pleas. He could with no more propriety have done this than he could have instituted two separate actions. There was no error in the ruling of the Circuit Court upon this point.

The next assignment of error is to the action of the trial court in admitting certain testimony offered by the defendant to which the plaintiffs objected. The guano was purchased by the defendant in the city of Norfolk from an agent of the plaintiffs; and, in order to support the warranty, it was incumbent upon the defendant to prove two things, first, that

the agent had authority to make such a warranty, either express or implied; and, secondly, that he actually made it. C. H. Simpson was the general agent of the plaintiffs in the city of Norfolk lor the sale of fertilizers, and it appears that he was expressly prohibited by his principal, who resided in Baltimore, to make any warranty as to their effect on the crop, but of this it does not appear that the defendant had notice. The object of the testimony was to prove a usage, and it was proper to go to the jury as tending to prove that it was a very general custom among farmers purchasing supplies of this sort in the Norfolk market to require a guarantee of the kind set out in the two special pleas. It is stated in the different terms by the several witnesses, whose testimony was objected to, but in substance they all seem to mean about the same thing. Their object was, especially with respect to a new brand of fertilizers, to require a guarantee that it was "as good as any other fertilizer of like price in the market."

It is, of course, well settled, that a usage in opposition to the common law, however general it may be, has no force in this country on the ground of custom (*Harris* v. *Carson*, 7 Leigh 632), and there is no customary law in Virginia which *per se* can vest a right in a party claiming under it (*Delaplane* v. *Crenshaw & als.*, 15 Gratt. 457); but a usage or custom of trade may be shown. Indeed this is conceded by the petition of plaintiffs in error, where it is said "a general agent to sell has no power to make a warranty, or any collateral contract binding upon his principal, outside of his express authority, or of that which is implied from the custom or usage of the trade in the business in which he is engaged. Without express authority a general agent is as powerless as a special agent to make such contracts and bind his principal, unless by the custom or usage of the trade in which he is engaged, such contracts of warranty are made; and the person who deals with an agent is as much bound by this limitation upon an agent's authority, when there is no

custom or usage of the trade, as the principal is bound by the authority conferred by implication when there is such custom or usage." This is a correct statement of the law upon the subject.

In 2 Benjamin on Sales, sec. 945, it is said: "Warranties are sometimes given by agents, without express authority to that effect. In such cases the question arises as to the power of the agent, who is authorized to sell, to bind his principal by warranty." The general rule is, as to all contracts, including sales, that the agent is authorized to do whatever is usual to carry out the object of his agency, and it is a question for the jury to determine what is usual. If in the sale of goods confided to him, it is usual in the market to give warranty, the agent may give the warranty in order to effect a sale. See also Story on Agency, sec. 60; *Goodenow* v. *Tyler*, 7 Mass. 36.

In *Pickert* v. *Marston and another*, 68 Wis. 465, it was held: "An agent employed to sell has no implied power to warrant unless the sale is one which is usually attended with warranty," and that the question of what is usual is for the jury, citing 2 Benj. on Sales, *supra.*

It is said in *Dingle* v. *Hare*, 97 Eng. C. L. 145: "The strong presumption is that when a principal authorizes an agent to sell goods for him, he authorizes him to give all such warranties as are usually given in the particular trade or business. An agent to sell has a general authority to do all that is necessary and usual in the course of such employment."

And in *Graves* v. *Legg*, 2 Hurl. & N. 210, Chief Justice Cockburn says: "The only question is whether, when a merchant residing in London contracts with a Liverpool merchant in Liverpool, he is bound by the usage of trade at Liverpool. We think that as he employed an agent at Liverpool to make a contract there, it must be taken to have been made with all the incidents of a contract entered into at Liverpool."

The law is well stated in *Herrings* v. *Skaggs*, 62 Ala., at

page 186, as follows: "As a general rule, the agent has power to do whatever is usual—to enter into such express stipulations as are usual and customary—in affecting such sales. What stipulations are usual and customary in effecting such sales is not always matter of judicial knowledge. It is declared in the sale of slaves and horses to be within the knowledge of the court that it is usual to give warranties. It cannot be affirmed that such custom exists in the sale of chattels. Generally, and we hold in a sale like the present, 'it is a question for the jury to determine what is usual.' This, in the absence of express authority in the agent to warrant; for, if the agent had such express authority, then his act is the act of his principal. And, in the absence of express authority, the question arises, and it is one for the jury, whether such warranty is customary. If the jury, on the evidence, find there was such custom, then the principal is bound, 'in the absence of prohibition,' resting on the agent, and brought to the knowledge of the purchaser, to the same extent as if the principal had himself given the warranty."

At page 41, 1 Parsons on Contracts, note (a), is to be found the following luminous and discriminating statement of the principle involved in this discussion: "The term *agency* seems to imply two quite distinct things, namely, a contract between principal and agent, and the legal means by which the principal is made, without his direct participation, a *party* to a contract with a third person. No advantage, but only confusion, seems to result from blending these two things. If, in considering agency in the latter aspect, the domestic contract between the principal and agent could be excluded from the mind and reserved for separate observation, it might conveniently be laid down as a rule of law that the principal is, in *all* cases, bound for acts of the agent done *within the scope of his authority*, and *never* except for those. In the case of a particular agent, the scope of authority is measured by the express directions he has received; in the case of a general

agent the law permits usage to enter in and enlarge the liability of the principal.''

From these authorities it appears that there are warranties which an agent to sell may make as one of the incidents of that employment, and of the power to make which the court will take judicial notice. They are such warranties as are usual. For example, a general agent to sell horses may warrant the soundness of a horse, for this is the warranty usually given in such transactions; but where the warranty is of an unusual character, the agent, having no express authority to warrant, cannot bind his principal unless it shall appear that by the custom of trade in the market in which he is transacting business it is usual for such agents to make the warranty in question. If there be evidence tending to prove that it is usual, it then becomes a question to be submitted to the jury whether in the particular case the agent was clothed with the requisite authority.

Simpson, as we have seen, was the agent of the plaintiffs for the sale of fertilizers in the city of Norfolk and its vicinity, and this evidence was admissible as tending to establish a usage of the trade in which he was engaged authorizing him to make the warranty relied upon in the special plea, although that power had been expressly denied to him by his principal; the defendant having no knowledge of such limitation upon his authority.

The error assigned as to the ruling of the court set out in bill of exceptions No. 1, is not well taken and must be overruled.

When the evidence was all in, the plaintiffs asked for an nstruction in the following words:

''That if the jury shall find from the evidence that the agent of the plaintiffs, in making sale of the fertilizers sued for in this case, represented the same to be as good a fertilizer and as well adapted to raising potatoes, beans, cabbage, and other vegetables as any other in the market of like price,

and also represented that the said fertilizer was as good a po-
tato special as any other in the market, as is set out in the
defendant's first special plea, and was authorized so to do by
the said plaintiffs; yet such representations will not amount in
themselves to a warranty, unless the jury shall further find
that the said representations when so made by the plaintiff's
agent, were intended by him to be a warranty to the defend-
ant of the fertilizer so sold; and furthermore, that the said
defendant understood the said representations to be a war-
ranty of said fertilizers, and was induced thereby at the time
to become the purchaser thereof;" but the court refused to
grant the instruction as asked for, and amended it so as to
read as follows:

"That if the jury shall find from the evidence that the
agent of the plaintiffs, in making sale of the fertilizers sued
for in this case, represented the same to be as good a fertil-
izer and as well adapted to raising potatoes, beans, cabbage,
and other vegetables as any other in the market of like price,
and also represented that the said fertilizer was as good a po-
tato special as any other in the market, as is set out in the
defendant's first special plea, and was authorized so to do by
the said plaintiffs; yet such representations will not amount
in themselves to a warranty, unless the jury shall further find
that the said representations, when so made by the plaintiffs'
agent, were intended by him to cause the sale; and further-
more, that the said defendant understood the said representa-
tions to be a warranty of said fertilizers, and was induced
thereby at the time to become the purchaser thereof."

This action of the court in refusing to give the instruction
as asked for, and giving it in its amended form, is assigned
as error.    The instruction as given by the court correctly ex-
pounds the law.    An affirmation of quality by the seller at the
time of sale, intended as an assurance of the fact and relied
on by the buyer, constitutes a warranty.    *Mason* v. *Chap-
pell*, 15 Gratt. 572; 2 Benj. on Sales (6th Amer. ed.), at page

812.    It is true that there can be no warranty unless the parties intend to warrant; that is to say, in the contract of warranty there must be an agreement of the minds of the contracting parties as in all other contracts, but no special form of words is necessary to create a warranty, and it has been held since the time of Lord Holt that an affirmation at the time of sale is a warranty provided the evidence shows that it was so intended; and, in determining whether it was so intended, the decisive test is whether the vendor assumes to assert a fact of which the buyer is ignorant, or merely states an opinion upon a matter of which the vendor has no special knowledge, and upon which the buyer may also be expected to have an opinion and to exercise his judgment.    2 Benj. on Sales (6th ed.), page 811-12, and authorities cited.

The law is so declared in *Mason* v. *Chappell*, *supra*, the opinion in which states the law *in totidem verbis*, as we have already given it from Benjamin.    The definition of a warranty is there accompanied, however, with the statement that no affirmation, however strong, will constitute a warranty unless it was so intended, which is true when understood in the light of the test to be applied in determining the intent to which we have just referred.    Every man is presumed to intend the consequences of his own act.    When, therefore, a vendor in negotiating a sale makes an affirmation of quality as an assurance of fact which is relied on by the buyer it constitutes a warranty, for the vendor will be presumed to have so intended.    So we find, in *Smith* v. *Justice*, 13 Wis. 600, the vendor having made such a representation of fact in order to induce a sale, and that representation being relied on by the defendant, it was held to be a warranty, and he was not allowed to avoid the effect of his representations by proof that he did not intend to warrant.

In *Hawkins* v. *Pemberton et al.*, 51 N. Y. at page 202, the court says: ''It is not true, as sometimes stated, that the representation, in order to constitute a warranty, must have been

intended by the vendor, as well as understood by the vendee as a warranty. If the contract be in writing and it contains a clear warranty, the vendor will not be permitted to say that he did not intend what his language clearly and explicitly declares; and so if it be by parol, and the representation as to the character and quality of the article sold be positive, not mere matter of opinion or judgment, and the vendee understands it as a warranty, and he relies upon it and is induced by it, the vendor is bound by the warranty, no matter whether he intended it to be a warranty or not. He is responsible for the language he uses, and cannot escape liability by claiming that he did not intend to convey the impression which his language was calculated to produce upon the mind of the vendee." See, also, *Hobart* v. *Young,* 63 Vt. at page 369.

The plaintiffs urge upon the court that the instruction as given would apply to any representation made by the vendor during the course of the negotiation, and calls attention to the fact that there is a class of representations known as "simple commendations" which the seller may make as mere expressions of opinion, and with no intention of giving a guarantee or warranty of their truth. This is undoubtedly true, and if the instruction were so framed as to embrace representations of this character it would be erroneous. The instruction, however, is predicated upon the proposition that the jury shall find from the evidence that the agent of the plaintiffs, in making sale of the fertilizers, represented the same to be as good a fertilizer and as well adapted to raising vegetables as any other in the market of like price. This cannot be deemed simple commendation. It is the assertion of a fact which constitutes the very gist and marrow of this case. If that assertion be simple commendation, then there is no merit in the defendant's contention. If it is the assertion of a material fact, or an affirmation of quality, made by the seller at the time of the sale, and relied on by the buyer, then it con-

stitutes a warranty. The instruction is based upon the particular affirmation of quality or assurance of fact which constitutes the very pith of the case under consideration. The instruction as given by the court fits the facts of the case, and calls the attention of the jury to the precise questions of law which are to apply to the evidence with more exactness than does the instruction as prepared by the plaintiffs in error. Conceding that both correctly state the law, that given by the court was better calculated to inform the jury as to their duty in the case which they were called upon to decide.

The defendant in error asked for three instructions, numbered 2, 3 and 4, respectively, which the court gave over the objection of the plaintiffs in error, and this act of the court is set out in the third bill of exceptions.

The defendant's instruction No. 2 is as follows: "The court instructs the jury that if they believe from the evidence that the plaintiffs' fertilizers were first introduced into this community for sale December, 1892, and the spring of 1893, and further believe that it was the custom or usage of the farmers of this section not to buy any fertilizer, when first introduced, upon the analysis thereof, but to require a warranty that the said fertilizer be as good as any other fertilizer on the market, dollar for dollar, as crop-producing, and if they further believe that C. H. Simpson warranted the fertilizers which he sold to the defendant, as alleged in his plea, then they are instructed that the plaintiffs are bound by such warranty, although they may further believe that he was restricted from making such warranty by any contract entered into between the plaintiffs and said Simpson, unless they further find from the evidence that the said written restriction was known to the said Bates at the time he made the said purchases."

What has been said upon this subject in passing upon the admissibility of evidence sufficiently expresses our opinion. The instruction was properly given.

The third instruction is in the following words: ''If the jury believe from the evidence that C. H. Simpson was authorized by the plaintiffs orally to warrant to the purchasers of their fertilizers that they were as good as any other in the market of like price, and that he warranted to the defendant Bates, when making sale of said fertilizers, that the said fertilizers were as good as any other in the market, for the same price, dollar for dollar; and they further find from the evidence that the said fertilizers were not as warranted, then they should find for the defendant such damages as have resulted naturally from the breach of the said warranty.''

One of the objections taken to this instruction turns upon the use of the words "should find for the defendant such damages as have resulted *naturally* from the breach of the said warranty." The objection is especially directed to the use of the word "naturally." We think it is but the equivalent of "legitimately," "normally," or in other words, embraces such damages as are the natural, that is to say, the legitimate, normal result consequent upon the breach of the warranty.

Another objection taken to the instruction is, as stated in the petition, that ''it left out of question the proof of damages resulting from the breach, and gave the jury the opportunity to call into play their imagination, supposition, and prejudice, if they had any.'' It is doubtless true that the plaintiffs were entitled to have it shown by the evidence how the damages with which it was sought to charge them arose. The jury are told that they must look to the evidence for proof of the warranty and of its breach, and if they found from the evidence that ''the fertilizers were not as warranted, then they should find for the defendants such damages as have resulted naturally from the breach of the said warranty.'' It would be a very ignorant or prejudiced jury that would find in this instruction direction or permission to assess any damages against the plaintiffs which had not been shown in evidence. If there had been no evidence in the case showing or

tending to show a breach of the warranty the instruction should have been refused upon that ground, but there being evidence before the jury upon the issue, both as to the warranty and its breach, and as to the false representation, it was the duty of the court to instruct as to the law upon those subjects, and the presumption, of course, would be that the jury would look to the facts before them in making up their verdict, and finally, if the facts did not warrant their verdict it was the duty of the court to set it aside and award a new trial. We cannot see, however, that the instruction could by possibility have misled or prejudiced the jury in the particulars pointed out, and, as it correctly states the law, this assignment of error is overruled.

The fourth instruction asked for by the defendant is as follows: "The court instructs the jury that if they believe from the evidence that C. H. Simpson, as the general agent of the plaintiffs for the sale of their fertilizers in this community, made to the defendant, Bates, any distinct assertion or affirmation of quality during a negotiation for the sale of the fertilizers, which was intended to cause the sale, and was operative in causing it, such affirmation, if made in good faith, was a warranty, and if made with knowledge of its falsity, was a warranty, and fraud. And the court further instructs the jury that the word warranty need not be used. It is enough if the words actually used imported an understanding on the part of the plaintiffs, through their agent, that the fertilizers were what they were represented to be, and that an affirmation of quality by the seller at the time of the sale intended as an assurance of fact, and relied on by the buyer, constitutes a warranty. No special form of words is necessary to create a warranty."

As we have seen in discussing bill of exceptions No. 1, there are warranties which a general agent may make. They are such as are usual in the business in which he is engaged. There are other warranties which he may not make unless

the usage of the market in which he is transacting business is that agents may make the particular warranty in question. Applying this rule to the case before us, the principal residing in Baltimore and employing an agent at Norfolk to sell fertilizers there, the contract of sale must be taken to have been made with all the incidents of a contract entered into at Norfolk. Had the warranty in the case been a usual one, we think the instruction would have correctly propounded the law; but the warranty before us is of an unusual character, and one which was not incident to the authority of Simpson as a general agent to sell, unless his power as such was enlarged by a usage in the Norfolk market which empowered him to give such a warranty. Instruction No. 4, therefore, should have been predicated, as were the other instructions, upon the power of the agent to bind his principal, and especially it should have been left to the jury to say upon the evidence whether the usage of trade at Norfolk was such as is claimed in the special plea of the defendant. Simpson was a general agent to sell. As such general agent he was authorized to do whatever is usual in the market to carry out the object of his agency, and it is a question of fact for the jury to determine upon the evidence what is usual. Nor is it necessary that the principal shall have notice of the course of business. He is presumed to know, or at least to expect, that the mode of dealing in the market he seeks may not be in all respects such as he would anticipate, and if the custom is not in itself unjust as against principals ignorant of it, there is no reason why it should not be enforced.

Is there any injustice in the warranty in question?

The evidence tends to prove that a sale without it, or its equivalent, would have been impossible in the Norfolk market, especially as the fertilizer offered for sale was a new brand. It is a warranty the dealer could hardly refuse to make and expect to retain his footing in the market, for there would be few to buy an article from one who was unwilling to assert

that the thing offered for sale was as good, dollar for dollar, as any other article of a like character offered upon the same market. There is nothing unjust in the warranty itself. It violates no principle or policy of law, and if it was in point of fact made by one authorized to give it, and broken, the only remaining question would be upon the *quantum* of damages. There is no absolute and unvarying standard by which the damages incident to the breach could be measured, but that is true of many warranties. The ascertainment of the damages upon the breach of the warranty before us would seem to depend upon conditions and circumstances capable of being presented with reasonable certainty to the minds of the jury. If, when applied in like quantities to the same crop, during the same season, upon the same land, receiving the same cultivation, a different result was obtained from the application of different brands of fertilizers, the difference in the fertilizers constituting the only ascertainable point of variance in the two cases, the conclusion is unavoidable that the inequality in the crops was caused by the only differentiating fact. In admitting the experience of other farmers, great caution should be exercised so that the evidence may show that the fertilizer warranted was subjected by the witness to conditions as nearly identical as possible to that with which it is to be contrasted or compared. Upon this point we are not without authority.

In *Rasin & Co.* v. *Conley*, 58 Md. 59, which was an action to recover the purchase price of fertilizers, the Circuit Court instructed the jury, in part, that if the jury find that the plaintiffs' agent when he sold the guano to defendant was authorized to, and did, warrant it to him to be composed of animal bones and flesh with the addition of potash, and to be equal to any other fertilizer in the market of equal or less price; and if they further find, from all the facts and circumstances in the case, that the guano delivered to the defendant was inferior in value to any other fertilizer sold in the mar-

ket, of equal or less price, used in the same field and under similar circumstances by the defendant, then the jury was instructed as to the measure of damages. There was evidence offered on behalf of the defendant that the guano was not as good as other guano of a like price used in the same field and under similar circumstances. The appellate court was of opinion that there was no testimony whatever to show that the warranty relied upon had been given, and the judgment was reversed, but in the course of the opinion it says: "If proof of such warranty had been adduced, we are clearly of opinion this testimony would have been admissible to show a breach of it; for it is hardly possible for the farmers to whom these products are sold, to prove that one is not equal in fertilizing qualities to another, in any more satisfactory way than by showing the different results in crops, when both are applied at the same time, under the same circumstances, and in like or appropriate quantities, to the same soil, prepared in the same manner and in the same field." *Crenshaw* v. *Slye*, 52 Md. 146. Were it otherwise, then the case would be presented of a warranty which might lawfully be made, but the breach of which it was impossible to prove by lawful testimony. This would indeed be "to keep the word of promise to the ear and break it to the hope."

For the error pointed out in the fourth instruction, given at the request of the defendant, we are of opinion that the judgment of the Circuit Court should be reversed.

*Reversed.*