𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

MUTUAL LIFE INSURANCE COMPANY OF NEW YORK v. BROWN.

September 20, 1923.

1. NEW TRIALS—*Verdict Contrary to the Evidence—General Rule.*—The trial court is without power to set aside a verdict on the ground that it is contrary to the evidence, unless it is either without evidence to support it, or is plainly contrary to the evidence.

2. INSURANCE—*Time of Payment of Premiums—Waiver.*—The rules of an insurance company required settlement for policies to be made within sixty days from date of physical examination, or else a new certificate of health to be furnished. In the instant case the premium was not paid until after the expiration of sixty days, but the insurance agent wrote to his immediate superior that he delivered the policies before the sixty days expired and took the insured's note, and the premium was accepted by the company.

   *Held:* That this constituted a waiver of the payment within sixty days.

3. INSURANCE—*Action by Insured for Premiums—Indebitatus Assumpsit—Motion for Judgment—Case at Bar.*—In the instant case the gist of the plaintiff's action was that he paid to defendant insurance company $700.18 as advance payments on $2,000 of life insurance which would have paid the premiums for over seven years, and that the defendant furnished the insurance for only one year and then cancelled the policies. The result of the transaction, if established, left the defendant with $604.20 of the plaintiff's money in its hands for which it had furnished no consideration, and which *ex aequo et bono* belonged to the plaintiff.

   *Held:* That under such circumstances plaintiff's money in defendant's hands was recoverable in an action of *indebitatus assumpsit* for money had and received to the use of the plaintiff, or by a proceeding by motion for judgment.

4. AGENCY—*Limitations on Authority of Agent—Notice of Limitation.*—One who has no notice of any limitation upon the powers of an agent has the right to deal with the agent upon the faith of his ostensible powers, whether his agency is general or special.

5. INSURANCE—*Authority of Insurance Agent—Collection of Advance Payments—Case at Bar.*—In the instant case, an action against an insurance company to recover money paid to an agent of the company to

be applied to advance payments of premiums, it was undisputed that the agent collected the advance payments, but it was insisted by defendant that the agent was an agent of limited authority and had no power to collect advance payments for the company, and that in receiving the payments the agent was acting as agent of the insured and not of the company. The agent testified that he had such authority and his immediate superior testifying for the defendant admitted that the agent had such authority provided he got defendant's receipt therefor duly signed before making the collection. Whether or not the agent complied with this condition was debatable. The agent did not testify that he did, but his testimony, while not very satisfactory, was such that the jury might have inferred that he was in the habit of making such collections.

*Held:* That the Supreme Court of Appeals was unable to say that the jury could not have found that the agent had authority to make the collection.

6. INSURANCE—*Authority of Insurance Agent—Collection of Advance Payments—Case at Bar.*—In the instant case, an action against an insurance company to recover money paid to an agent of the company to be applied to the advance payments of premiums, defendant disputed the agent's authority to collect advance payments.

*Held:* That if the collection was made by the agent and paid over to the defendant, it was immaterial whether he had authority or not.

7. INSURANCE—*Collection of Advance Payments on Premiums by Insurance Agent—Payment of Collections by Agent to Insurance Company—Case at Bar.*—In the instant case, an action by plaintiff against defendant insurance company to recover money paid by him to the insurance company, plaintiff paid to an agent of defendant insurance company a sum of money as "advance payments" on his policies of insurance. On the question of whether or not this collection made by the agent was in fact paid over by him to the defendant as such advance payments, the evidence was in direct conflict. The agent testified that he sent the money by check, and his immediate superior that no such check was ever received.

*Held:* That on a motion to set aside a verdict for plaintiff as contrary to the evidence these statements must be regarded as in conflict, and that the question involved was peculiarly one for trial by jury, and that the record did not disclose such a state of facts as warranted interference by the Supreme Court of Appeals.

8. NEW TRIALS—*Verdict Contrary to the Evidence—Where Court would have Found a Different Verdict.*—A verdict should not be set aside simply because the court, if on the jury, would have found a different verdict. To warrant the setting the verdict aside it must be either without evidence to support it, or plainly contrary to the evidence.

9. INSURANCE—*Action for Money had and Received—Instructions—Case at*

*Bar.*—In an action against an insurance company for money paid an agent of the company for advance premiums on a life insurance policy, which the company canceled, the court instructed the jury that if they believed from the evidence that the agent collected from plaintiff the sum for advance payments of premiums and actually remitted the same to the defendant company, and that the company received it for the payment of advance premiums, then the company was liable.

*Held:* That as the proceeding was in effect an action for money had and received, the instruction was within the scope of the pleadings.

10. INSURANCE—*Action for Money Paid as Advance Premiums—Instructions—Case at Bar.*—In the instant case, an action for money paid as advance payments on policies, the court instructed the jury that if they believed the defendant's agent collected from the insured the money in question "and actually remitted the same to the defendant company, and that the company received it for the payment of advance premiums," the company was liable. It was objected that this instruction warranted a finding for the plaintiff although the jury might have believed that the money was paid "to the company and received by the company for the payment of advance premiums due," not by the insured, but by third persons.

*Held:* That there was no merit in this objection.

11. INSTRUCTIONS—*Assumption that the Jury is Intelligent.*—Instructions are to be read in the light of the evidence, and upon the assumption that the jurors are at least men of fair average intelligence, and will apply the law given by the court to the evidence introduced before them.

12. INSURANCE—*Payment of Advance Premiums—Duty of Insurance Company.*—If an insurance company receives the money for advance premiums on a policy, it is its duty to furnish the insurance, or else refund the money; and it is immaterial whether the company's agent had authority in the first instance to receive the advance premiums, or whether the insured looked at his policy or not to see whether he was credited with the advance premiums.

13. INSTRUCTIONS—*Instructions not Supported by the Evidence.*—It is not error to refuse an instruction where there is no evidence to support it.

14. INSTRUCTIONS—*Misleading Instructions—Directing Verdict on Partial View of the Evidence.*—It is not error to refuse an instruction which directs a verdict upon only a partial view of the evidence, and whose tendency would have been rather to confuse the jury than to aid them in arriving at a correct conclusion.

15. INSTRUCTIONS—*Point Covered by Other Instruction.*—It is not error to refuse an instruction where the point contained therein is fully covered by another instruction.

Error to a judgment of the Court of Law and Chancery of the city of Roanoke, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Frederick L. Allen* and *Hall, Wingfield & Apperson,* for the plaintiff in error.

*C. S. McNulty,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This is a proceeding by motion under section 6046 of the Code, instituted by Brown against the Insurance Company and Brooks Marmon, to recover $700.18 alleged to have been paid to Marmon as agent of the Insurance Company for certain insurance in the defendant company which was never furnished. There was a judgment against the Insurance Company for $604.30, to which the company assigns error.

[1, 2] There are four assignments of error, the first two of which are to the refusal of the trial court to set aside the verdict of the jury on the ground that it is contrary to the evidence. The trial court was without power to set aside the verdict on that ground, unless it was either without evidence to support it, or was plainly contrary to the evidence. The case made by the evidence as we must view it was as follows: Brooks Marmon had been the agent of the company at Roanoke, Virginia, for a number of years and had authority to solicit insurance, to give information as to the character of the insurance written and the rates therefor, to collect the first year's premiums and "premiums or

advance payments" on policies for a limited number of years, and to deliver policies to the insured. He was required "to pay over all premiums or advance payments as soon as collected." The plaintiff, Horace E. Brown, had two life policies in the defendant company for $1,000.00 and $500.00 respectively, maturing, or upon which payment of premiums would cease, about May 20, 1920. He had borrowed money of the company on these policies, but they still had a further loan value of something over $700. Shortly before these policies matured, Marmon went to see Brown and interviewed him on the subject of taking out new insurance in the defendant company. He represented to Brown that by using the remaining loan value of his old policies, and the dividends on all of his policies, he could procure $2,000.00 of insurance on the ordinary life plan, and that such loan value and dividends would pay the premiums on the $2,000.00 policy for a period of ten years, and that thereafter his "dividends would practically carry it the rest of the time, he would hardly ever have very much to pay on it." Brown approved the suggestion of Marmon, and on May 8, 1920, stood the necessary physical examination, and filled out and signed an application for two policies of $1,000.00 each on the ordinary life plan, with premiums payable annually. This application was accepted and the policies duly executed by the company and forwarded to Marmon to be delivered on the payment of the premiums. In July, 1920, Brown applied to the company for the loan value of his old policies, and the company sent him through Marmon checks dated July 23, 1920, for such loan value payable to Brown and his wife. One of these checks was for $466.77 and the other $233.41, aggregating $700.18, the amount sued for. These checks were properly endorsed and delivered to Marmon to

carry out the contract Brown had previously made with Marmon. Marmon, testifying for the plaintiff, states that shortly thereafter he paid over to the company the first year's premiums, amounting to $95.98, and later on paid the company the balance of the $700.18 to be applied to premiums, on Brown's policies. The latter payment is denied by the company. The rules of the company required settlement for policies to be made within sixty days from date of physical examination, or else a new certificate of health to be furnished. The premiums were not paid until about July 23rd, but Marmon wrote to Love, his immediate superior, under date of July 29, 1920, that he delivered the policies before the sixty days expired and took Brown's note, and the premium was accepted by the company by letter under date of August 3, 1920. Brown did not examine his policies until March, 1921, and then found that he had credit for only one annual premium. In the meantime Marmon had borrowed $5,000.00, and had given a deed of trust on property belonging to him, to secure and indemnify his sureties on the loan. What the financial condition of Marmon was at that time does not appear from the record. When the plaintiff discovered that only one payment had been made on his policies, and the company refused to give him credit for the "advance payments" made to Marmon and cancelled his policies, he demanded a return of the money he had paid to Marmon, as its agent, for "advance payments." The company refused to return the money and this action was brought to recover it.

[3] The gist of the plaintiff's action is that he paid to the defendant $700.18 as advance payments on $2,000.00 of life insurance which would have paid the premiums for over seven years, and that the defendant furnished the insurance for only one year and then

cancelled the policies. The result of the transaction, if established, left the defendant with $604.20 of the plaintiff's money in its hands for which it had furnished no consideration, and which *ex aequo et bono* belonged to the plaintiff. It was recoverable in an action of *indebitatus assumpsit* for money had and received to the use of the plaintiff, or on motion as in this case. *Robertson* v. *Robertson* (decided at this term), *post* p. 378, 119 S. E. 140.

[4, 5] It is undisputed that Marmon collected the $700.18 of Brown to be applied to advance payments of premiums on the $2,000.00 insurance, but it is earnestly insisted by the company that Marmon was an agent of limited authority and had no power to collect advance payments for the company, and that in receiving and collecting the checks from Brown he was acting as agent of Brown, and not of the company. Brown had no notice of any limitation upon the powers of Marmon, and had the right to deal with him upon the faith of his ostensible powers, whether his agency was general or special. *Byrne* v. *Massasoit P. Co.*, 137 Mass. 313; *Butler* v. *Maples*, 9 Wall. 766, 774, 19 L. Ed. 822; *Reese* v. *Bates*, 94 Va. 321, 26 S. E. 865; Huffcut on Agency, sec. 104. Marmon's employment by the company was by written contract, and whether or not he had authority, under that contract, to collect in advance more than one premium on any ordinary life policy is not free from doubt. He thought and testified he had, and Love, the manager of the Richmond agency, which covers most of the State of Virginia, including Roanoke, while testifying for the company, admitted he had such authority provided he got the company's receipt therefor duly signed before making the collection. While clause 1 of the contract only authorized Marmon to collect "first year premiums,"

clause 5 required him "to pay over all premiums or advance payments as soon as collected," and by implication at least, authorized the collection of "advance payments." It was argued for the company that "advance payments" had reference to first year's premiums, but this cannot be a correct interpretation, for not only is there a difference in the language used, but rule 137 of the company, which was made a part of Marmon's contract, provided that in a policy of this kind ten annual premiums "will be accepted in advance with a discount to the insured as noted below," and the Richmond manager testified to the same effect Whether or not Marmon complied with the conditions under which he was authorized to receive such "advance payments" is another question. Love, the Richmond manager, testified that he did not. Marmon does not testify that he did, nor does any other witness, but the testimony of Marmon on the subject of the collection from Brown, while not very satisfactory, is such that the jury might have inferred that he was in the habit of making such collections. While testifying as to the payment, beyond the first year's premium on the Brown policies, he stated that he did collect premiums and then pay them over to the company "on these policies and other policies." If the evidence of the company in conflict with that of the plaintiff be discarded, and all fair inferences from the plaintiff's testimony be drawn in his favor, we are unable to say that the jury could not have found that Marmon had authority to make the collection.

[6-8] But if we are in error in this conclusion, it is immaterial whether he had such authority or not, if the collection was in fact made by Marmon on "advance payments" on the policies of Brown, and was paid over by him to the company as such "advance payments."

On this subject the evidence for the plaintiff and the defendant is in direct conflict. It is true that Marmon said that he sent the money by check and was unable to produce his cancelled check, for which he undertakes to give some sort of explanation, and that Love states that no such check was ever received, and there is the possibility that the check was sent and never received, but civil cases are not tried on possibilities, but probabilities. On a motion to set aside the verdict as contrary to the evidence, the statement of Love that no such check was ever received must be regarded as in conflict with the statement of Marmon that he sent it. The situation presented a question for the jury. The testimony of Marmon as it appears in cold print, is far from satisfactory. He says, "I paid his premium on his new policy, and at some time—I don't know, I can't say when—but in some transaction that money went back to the company." He says he sent the money by check, and at one time stated, "I have cancelled checks in my office," but later on cross-examination admitted that he did not have the checks, and stated that they had been missed sometime before the trial. The trial judge propounded to him a number of questions on the subject. That examination was in part as follows:

"By the court:

"Q. You said when you sent checks you also sent a report, didn't you?

"A. Yes, sir.

"Q. Did the report show what money you were remitting in the check?

"A. The company generally sent, or we had, those blank reports, monthly reports, and the policies were listed and we would sign those and send them in, we would make a list of whatever was sent in.

"Q. My question is this: You said you sent a check,

and at the time you sent a check you sent a report, didn't you?

"A. Yes, sir; that is on new business.

"Q. Did the report show what the check was sent for?

"A. Yes, sir.

"Q. Well, did it show what money was included in the check?

"A. The report would show; yes, sir.

"Q. And you say you sent this money that you received from those two checks that were given for the loan; that you sent the money for those two checks to this company?

"A. Yes, sir.

"Q. At one time you said you sent the premium on the new policies that you took?

"A. Yes, sir.

"Q. And at another time you sent the balance of that money?

"A. Yes, sir; at some other time.

"Q. And you made a report to the company which showed that you were sending them the balance of that money?

"A. Yes, sir; I would generally write a letter, or sometimes I wouldn't even do that.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. Now, what did your report show that you paid this money over to the company for?

"A. You mean this Brown?

"Q. Yes.

"A. It would show that I paid the net on the policy, and later on it would show that I paid the balance of the money.

"Q. What did you pay the balance of the money for?

"A. To go to his credit.

"Q. To go to his credit?

"A. Yes, sir.

"Q. To be applied on other premiums?

"A. To be applied on other premiums; yes, sir."

Counsel for the plaintiff then asked him, "Mr. Marmon, you had the right to collect, under this contract, all premiums and advance payments on policies, did you not under the fifth clause here?" To which he replied, "Yes, sir." Further: "You tell the jury that you did remit this money to the company that you collected from Horace E. Brown?" Ans. "Yes, sir."

As the case appears to us, we are not prepared to say that we would have found the same verdict that the jury found, but they had the advantage of seeing the witnesses and their demeanor on the stand, and of hearing, and it has been repeatedly said by this court that where there is some evidence to support the verdict, it should not be set aside simply because the court, if on the jury, would have found a different verdict. To warrant the setting the verdict aside it must be either without evidence to support it, or plainly contrary to the evidence.

The question involved was peculiarly one for trial by jury. An able trial judge has refused to set the verdict aside, and the record does not disclose such a state of facts as warrants interference by this court.

[9-11] Exception was taken to the action of the trial court in giving the following instruction for the plaintiff, designated Instruction A: "The court instructs the jury that if they believe from the evidence that J. Brooks Marmon collected from H. E. Brown, the plaintiff, the sum of $700.18 and actually remitted the same to the defendant company, and that the company received it for the payment of advance premiums, then the said Mutual Life Insurance Company is liable to

plaintiff for said amount less the sum of $95.88, and the jury must find for the plaintiff for the sum of $604.30, with interest from July 23, 1920, until paid, against said company."

We have already pointed out that the proceeding was in effect an action for money had and received, and hence the instruction was within the scope of the pleadings. The only other criticism of it is that it warranted a finding for the plaintiff although the jury may have believed the money was paid "to the company and received by the company for the payment of advance premiums due, not by Brown, but by third persons." Instructions are to be read in the light of the evidence, and upon the assumption that the jurors are at least men of fair average intelligence, and will apply the law given by the court to the evidence introduced before them. *New York, etc., R. Co.* v. *Thomas,* 92 Va. 606, 24 S. E. 264.

The instruction correctly stated the law, and is not amenable to the objection made to it.

[12, 13] The defendant asked for seven instructions. The court refused three of them and give the other four. The defendant excepted to the action of the court in refusing instructions numbered 1, 2 and 3. Instruction No. 1 was as follows: "The court instructs the jury that it is the duty of one who procures insurance on his life to examine the policy promptly upon its receipt, and if it does not accord with his contract to return it within a reasonable time, and if they believe from the evidence that the two policies of insurance issued to the plaintiff were delivered to him and that he kept the same for a period of six months or more, and made no complaint and that before he made any complaint to the defendant insurance company, the defendant, Marmon, encumbered his property or a substantial portion

10

thereof, so as to make the collection of any claim against him difficult, they must find for the defendant, even though they may believe from the evidence that the policies did not carry out the previous understanding between the plaintiff and Marmon, and even though the defendant, Marmon, appropriated the plaintiff's money in the notice mentioned."

The first branch of this instruction was sufficiently covered by instruction A given for the plaintiff. By that instruction the plaintiff did not ask for a recovery simply if the money was paid to Marmon, but went further and asked recovery only if Marmon "actually remitted the same to the defendant company and that the company received it for the payment of advance premiums." If such were the facts, it was immaterial whether the plaintiff looked at his policy or not. If the company received the money for advance premiums on the policy, it was its duty to furnish the insurance, or else refund the money. It was immaterial whether Marmon had authority to receive the premiums in the first instance or not, if the company received and accepted the money for the purpose aforesaid. If such were not the facts, the inference was the jury were to find for the defendant. Instruction No. 4, given for the defendant, told the jury that the burden was on the plaintiff to show that the company "received the money paid by the plaintiff to Marmon in this case, and the plaintiff must show this by a preponderance of affirmative evidence." The instruction tendered ignored this feature of the case, and would have been misleading to the jury, in view of the language of instruction A. The company was amply protected by instruction A if Marmon received the money without authority and appropriated it to his own use. The latter part of the instruction was properly refused because there is no evi-

dence that Marmon was not abundantly solvent, or that the deed of trust given by him on some of his property would "make the collection of any claim against him difficult." No error was committed in refusing instruction No. 1.

Instruction No. 2 tendered by the defendant company was as follows: "The court instructs the jury that if they believe from the evidence that (*the plaintiff*), Brooks Marmon, was the agent of the defendant, The Mutual Life Insurance Company, at Roanoke, for the purpose of soliciting policies of insurance, obtaining applications therefor and forwarding the application to the company, which were passed upon by the company and after approved, policies were issued and then forwarded to the said Marmon, who had authority only to deliver said policies and collect the first premiums thereon; and if they further believe from the evidence that the plaintiff, Horace E. Brown, obtained a loan from the defendant, The Mutual Life Insurance Company, who sent the checks payable to the order of said Brown and his wife in payment of said loan, amounting to $700.18, to the said Marmon, with instructions to deliver the said checks to the said Brown, that the said Marmon delivered the said checks to the said Brown, who, with his wife, endorsed the said checks in blank and said Brown delivered the same to the said Marmon, with the intent and for the purpose of procuring insurance of the defendant, The Mutual Life Insurance Company, on the life of the said Brown for such a period and for such amount as could be purchased for the said sum of $700.18, then the said Marmon was in said transaction the agent of the plaintiff and not the agent of the defendant, The Mutual Life Insurance Company, then you shall find for the defendant, The Mutual Life Insurance Company."

[14] The trial court committed no error in refusing this instruction. It directs a verdict for the defendant upon only a partial view of the evidence, and its tendency would have been rather to confuse the jury than to aid them in arriving at a correct conclusion. It omits all reference to the testimony relating to the remittance to the company as "advance payments" on the policies of Brown and the acceptance by the company of the money for the purpose for which the remittance was made. Marmon may have been the agent of Brown in the first instance, but if he actually paid the money to the company as advance premiums on Brown's policies, and the company received it as such, there could have been no verdict in favor of the defendant company.

[15] Instruction No. 3 tendered by the company and refused was practically the same as No. 2, except that the concluding paragraph of No. 3 was as follows: "And if the jury further believe from the evidence that the said Marmon did not pay over the said sum of $700.18 to the said defendant, The Mutual Life Insurance Company, after the said checks were so endorsed and delivered to him by the said plaintiff, then you shall find for the defendant, The Mutual Life Insurance Company." This part of instruction 3 is fully covered by instruction 6 given at the instance of the defendant company, and the trial court committed no error in refusing to give instruction 3.

Instruction 6, above referred to, was as follows: "The court instructs the jury that if they believe from the evidence that the defendant, Marmon, was the agent of The Mutual Life Insurance Company for the purpose of soliciting policies of life insurance, and that the said company sent to said Marmon the two checks in the notice mentioned, made payable to the order of the plaintiff, Brown, and his wife, and that the plaintiff

and his wife endorsed the checks in blank and turned them over to Marmon for the purpose of buying insurance, and that *Marmon had no authority to receive the same for the company, and that Marmon appropriated the proceeds of the checks to his own use, the plaintiff and not The Mutual Life Insurance Company made the loss possible, and the plaintiff must bear the loss as between him and the said company, and they must find for the defendant, The Mutual Life Insurance Company and against the defendant, Marmon.*"   (Italics supplied.)

The instructions given by the court fully and fairly submitted to the jury the law on the issues involved, and no error was committed by the trial court in its rulings on the instructions tendered.

The record discloses no error in the proceedings in the trial court, and its judgment is accordingly affirmed.

*Affirmed.*